AARON A. WING *versus* WILLIAM G. CLARK & al.

When the terms of sale of personal property are agreed on, and the bargain is struck, and every thing the seller has to do with the goods is complete, the contract of sale becomes absolute, without actual payment or delivery, and the property in the goods is in the buyer; and if they are destroyed by accidental fire, he must bear the loss.

A delivery of an article sold to a person appointed by the vendee to receive it, is a delivery to the vendee.

ASSUMPSIT upon a note. The parties put down the testimony of witnesses, and referred to depositions, letters and an order, as if the same had been introduced in evidence on a trial; and thereupon submitted the case to the decision of the Court. The facts, considered by the Court to be proved by the evidence, appear in the opinion.

The views taken of it by the counsel will be found in the arguments.

*A. Sanborn*, for the defendants.

This action is against the defendants, as joint promisors, not as partners.

1st. Then, as to the contract declared on. It is within the statute of frauds and void, because, "no note or memorandum, in writing, of the bargain, was ever made and signed by the defendants or their agent." Rev. St. c. 136, § 4.

If the letters of Clark, recited in the report, amount, in law, to such note or memorandum, on his part, it is not perceived how they can have such effect as to Jacobs, the other defendant. He did not sign them himself, nor by any other person. His name, William Jacobs, no where appears in the letters. He is spoken of by Clark, in his first letter, as Mr. Jacobs, and, in the second, embraced, undoubtedly, in the term, we; but no case in the books, so far as my researches reach, even tends to sustain the position, that this is sufficient to take the contract out of the statute, as to Jacobs.

A contrary decision, it seems to me, would subvert all previous authorities, nullify the statute and open a wide door to all the evils it was designed to prevent. Nor have the defendants ever accepted the machine "and actually received the

same." Doughty, the teamster, was their agent, for a certain specific purpose, with strictly limited powers. That purpose was to carry the note to Emery, Stetson & Co's., and leave it with them, *if* he *should bring* the machine from them to the defendants. If he did not bring the machine, his orders were positive not to leave the note. Did he bring the machine? No. Did he leave the note? Yes. He, therefore, disobeyed his orders, transcended his authority; and the defendants are not bound by his acts. *Snow* v. *Perry*, 9 Pick. 542.

It may be said, that Doughty concluded to bring the machine before he left the note and took it on to his sled for this purpose, and that this is tantamount to a delivery to, and an actual receipt by the defendants. I reply, that he left the note *without* bringing away the machine, so exceeding his authority and not binding the defendants. No conclusion, no determination of Doughty to bring it, no removal of it from the shop to his sled, and afterwards returning it because he could not bring it, nothing short of actually bringing it away, could authorize his leaving the note, or be considered as a compliance with the orders of the defendants, " not to leave it unless he should bring the machine from Emery, Stetson & Co." Besides, Doughty, after ascertaining by trial that he could not bring it, replaced it in the shop of Muzzy, notified Mr. Emery, of the firm of Emery, Stetson & Co. of the fact, repeated his orders, and demanded the note. All these and the other acts of his relative to this matter must be taken together. So viewed they clearly show the intention of Doughty to be the fulfilment of his instructions. And he was, eventually, only prevented from so doing by the wrongful detention of the note by Mr. Emery, acting, no doubt honestly, under a misapprehension of duty. Nor have the defendants, at any time, ratified Doughty's acts either impliedly or expressly. On the contrary they entirely repudiated them to him on his return, and, as soon as was necessary, to Emery, Stetson & Co. the plaintiff's agents in this behalf, the machine having been so immediately burned, even before it was practicable to communicate with the plaintiff, directly or through that firm. There has been no payment

in part or whole for the machine. For the note having been left with Emery, Stetson & Co. by Doughty, in plain violation of his orders, and withheld wrongfully by Emery, it must be regarded, as has been shown, as *not* left by the defendants, and as never having vested in the plaintiff.

The agreement for the sale and purchase of the machine not having been completed before it was consumed by fire, the loss legally falls upon the plaintiff, and he must bear it. *Thompson* v. *Gould*, 20 Pick. R. 134, and cases there cited.

The machine was out of repair. That the plaintiff was bound to repair it, is proved by his causing it to be repaired at Muzzy's shop. His agreement was to deliver it in good repair, at Emery, Stetson & Co.'s store, when called for. It was repaired, and was suffered to remain at the shop. He ought to have removed it back to the store, and had it ready for delivery there. If it had been in the store it could not have been burned up in the shop. . Its burning, then, was the consequence of his own neglect, and to throw the loss upon the defendants would be hard, indeed, and grossly unjust. It is manifest that the plaintiff never had informed the defendants, that he had sent the machine to Muzzy's shop for repairs, and of its being there, and they could not consent to its being there before they employed Doughty to transport it to them, and he called on Emery, Stetson & Co. for it; and his acts, clearly, on every principle, cannot be construed into such consent subsequently. Nor can the plaintiff object that the defendants should have called and taken the machine away earlier, and thus avoided the loss. It does not appear that the machine was repaired and fit for delivery, according to the terms of the contract, sooner. In fact, it was not ready for delivery, as agreed, when called for, on the 2d of March, 1841. And, if it had been, I submit whether the defendants delayed sending for it beyond a reasonable time, so as to make them responsible for its loss, even if the contract were liable to no objection by reason of the statute of frauds, as before urged.

2d. As to the note. If the grounds I have taken in relation to the contract are tenable, it follows, that the note is void, for

want of consideration; and, moreover, whether so or not, that the plaintiff is not entitled to it, does not own it, having got it not only, without, but against the consent and authority of the defendants, and cannot therefore, maintain this action upon it.

*Abbott*, for the plaintiff.

The shearing machine was sold and delivered to the defendants, and the plaintiff is entitled to judgment, either on the note of hand, or on the count for goods sold and delivered. The latter count is not within the statute of frauds. There is a clear distinction between an action for goods sold and delivered, and an action on a contract for the sale of goods. The latter only is within the statute. *Penniman* v. *Hartshorn, & al.* 13 Mass. R. 87. But if this were a case within the statute, the letters of Clark, connected with the evidence in the case showing the joint interest of Jacobs with him, and their signatures to the note of hand, are sufficient to take it out of the statute.

To whom then did the machine belong, when it was consumed by fire? From the whole case it appears, that the plaintiff, being the owner of a shearing machine, agreed to sell it to the defendants on a credit of six months for sixty dollars, and to deliver it at some place in Bangor to be designated by him; and that he afterwards, and soon after the letter of Clark of the 22d July, 1840, gave them notice, that the machine had been placed in the store of Emery, Stetson & Co. That this notice was duly given and received may be inferred from the fact, that the defendants soon after sent for it.

The plaintiff contends, that, the moment information was given the defendants of the place where the machine was delivered, it became their property. This delivery was in law a delivery to them. The terms of the sale had been agreed on, every thing, incumbent on the plaintiff to do, had been performed, and the sale had become absolute. Comyn on Cont. 135; 2 Kent, 492. He says, " when the terms are agreed on and the bargain is struck, and every thing the seller

has to do with the goods is complete, the contract of sale be-comes absolute without payment or delivery, and the property and the risk of accident to the goods vest in the buyer." As soon as goods are delivered to a carrier or put on board a ves-sel by direction of the purchaser, they are at his risk. *Vale* v. *Bayle*, Cowp. 294; *King* v. *Meredeth*, 2 Campb. 639; *Cooke* v. *Ludlow*, 2 New Rep. 119, cited and commented on in Co-myn on Cont. 135. And the seller or consignor cannot main-tain an action against a third person for an injury done to the goods. *Brown* v. *Hodgson*, 2 Campb. 36. Even if the goods are sold on credit, and nothing is agreed on as to the time of delivery of the goods, the right of possession and property forthwith vest in the vendee. *Bloxam* v. *Sanders*, 4 Barn. & Cresw. 941.

But there was an actual delivery. It seems the teamster, when he called for the machine in the summer, when it was ready to be delivered, declined taking it, because he would not give a receipt to Emery, Stetson & Co. acknowledging that he had received it. On account of this delay, the de-fendants had fitted up an old machine of their own, and were desirous of giving up the contract. This was declined by the plaintiff, but he consented to extend the time of payment to one year. As appears by the letter of Clark of Nov. 16, he promises to send a note of hand conformable to that proposi-tion and take the machine. The contract, or rather sale, stood as it was, except as to the time of payment. After suffering the machine to remain from the summer of 1840 to March, 1841, the defendants sent again for the machine, with their note in payment. The note was delivered and the machine received on the carrier's sled. Consulting his own conven-ience and not following the instructions of his employers, he returned the machine into the shop, where it was soon after consumed by fire.

Suppose that the property in the machine had not vested in the defendants, until it was received by the carrier and placed upon his sled. It cannot be denied that this was a delivery to them. The carrier was their agent; they had directed him

to take the machine and bring it to them; and it having been once received into their possession, the property vested in them, and could not be revested in the plaintiff without his consent. In regard to the delivery of the note, the carrier conformed substantially to the instructions of his principals. Suppose he had driven his team two miles out of town and then concluded to leave his machine, would he have returned and demanded his note, and should Emery have delivered it up to him? The two cases are substantially the same.

But it has been shown that the property had, months before, vested in the defendants, and their letter of November, is evidence, that they so considered it. "They felt bound in honor to take it," and they did take it. It is worthy of notice, that when they sent for the machine on the 2d March, 1841, they sent their note bearing date Jan. 1, two months before. Why was this note thus dated, unless the bargain had been completed at that time?

The counsel for the defendants seems to regard Emery, Stetson & Co. as the agents of the plaintiff. This we deny. The plaintiff had nothing to do with the machine after he placed it in their store.

He also states, that the machine was out of repair; and, that the plaintiff was bound to repair it, was to be inferred from his having sent it to Muzzy's shop. This is contradicted by Emery, the witness. He stated, that, "in the mean time," that is between the first and second time of sending for the machine, it "had got injured and we sent it to Muzzy's shop to be repaired." It was their duty to see, that any injury received by the machine, while in their care, should be repaired.

The hardship of the case has nothing to do with the legal question. But it is evident the loss arose from the negligence of the defendants or their agent. Had the teamster given a receipt for the machine, as required, which he ought to have done, no loss would have happened. Then seven months were suffered to elapse before it was again sent for; and this

was gross negligence. On the other hand, it appears the plaintiff performed his duty promptly and without delay.

*A. Sanborn*, for the defendants, replied.

The opinion of the Court was drawn up by

WHITMAN C. J. — By the statement of the evidence agreed upon by the parties, the conclusion, as to the matter of fact, as well as of law, is submitted to the consideration of the Court. By two letters, copied into the statement, it appears, that the defendants, who were clothiers, as early as the sixteenth of November, 1840, had contracted with the plaintiff to buy of him a shearing machine, at the price of sixty dollars, payable in one year; and, by the note of hand sent by them to him, for the consideration, and in suit in this action, that it was to be given therefor payable with interest. The machine was to be delivered at Bangor, when the defendants should find it convenient to send for it. The contract, therefore, seems to be sufficiently evidenced by writing, so as to be unaffected by the statute of frauds.

Independent of any actual delivery of the article, here was a binding contract of sale. And it is laid down in Black. Com. vol. 2, p. 488, that, "as soon as the bargain is struck, the property of the goods is transferred to the vendee, and that of the price to the vendor; but the vendee cannot take the goods till he tenders the price agreed upon." It is then laid down further, on the same page, that the goods, so under a contract of sale, are at the risk of the vendee till paid for and taken away; and if destroyed by accident, in the mean time, the vendor may recover the price. And in the Institutes, 1, 24, 3, it is said "*cum autem emptio et venditio contracta sit periculum rei venditæ statim ad emptorem pertinet tametsi ad·huc ea res emptori tradita non sit.*" The shearing machine, to recover the price of which, this action was instituted, was in March, next after the contract, accidentally destroyed by fire. Here, then, if the evidence in the case went no further, there would seem to be no reason why the plaintiff should not recover.

But the evidence does go further. In February next after the contract, the defendants, in pursuance of it, made the promissory note declared on, dated the first day of January, 1841; and sent it to the plaintiff by a teamster, who was directed by them to leave it on receiving the machine, and to transport it to them. The teamster proceeded to Bangor, and delivered the note on receiving an order upon one Muzzey, with whom the machine had been deposited in Bangor, to deliver it to him. This teamster, whose testimony is given at length in the case, says, that, upon examination of it, he concluded he could not carry it safely and therefore left it where he found it. Another witness in the case, Moses Sanders, says he was at Muzzey's shop when the teamster came with his order, and that he helped him lade the machine on board of his sled or cart; after which the teamster, thinking that he could not carry it safely, concluded not to carry it, and it was unladed, and left in the shop, which, with the machine, on the night of the fourth of March next following, was burned. Though the teamster does not state, that he got the machine on to his sled or cart, yet he in nowise contradicts Sanders as to this fact, but is merely silent about it. It must be regarded as true, therefore, that the teamster did receive and lade it; and afterwards thought proper, for his own accommodation, to unlade and leave it.

Here, then, there was not only a contract of sale, but a delivery of the article sold. The cases are numerous, which show that, a delivery of an article sold, to a person appointed by the vendee to receive it, is a delivery to the vendee. *Dutton* v. *Solomonson*, 3 B. & P. 582; *Harwood* v. *Lester*, *ib.* 617; *Dawes* v. *Peck*, 3 Esp. 14; *Cooke* v. *Ludlow*, 2 New R. 119; *Huxam* v. *Smith*, 2 Campb. 19. And it has been held even, that the giving of an order, by the vendor, to the vendee, on a person, in whose custody the goods were, to deliver them to the vendee, was a good symbolical delivery. *Searle* v. *Keeves*, 2 Esp. R. 598.

The sale, therefore, in the case at bar, had become complete. The machine had become absolutely the property of

the defendants.  The promissory note. declared on was properly given, and retained, notwithstanding what was testified to by the teamster, in reference to his orders not to leave the note without he brought the machine.  And, if the plaintiff could not recover on the count upon the note, his action would well lie upon his other count.

Judgment for sixty dollars with interest from Jan. 1, 1841.