[No. 52158–1.   En Banc.   May 22, 1986.]

COAST PACIFIC TRADING, INC., ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Bell & Ingram, P.S., William F. Ingram,* and *David S. Carson,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *James R. Tuttle, Assistant,* for respondent.

*Ray Graves* and *L. Paul Alvestad* on behalf of Manke Lumber Co.; *John T. Piper* and *Franklin G. Dinces* on behalf of Longview Fibre Co., amici curiae for appellants.

UTTER, J.—Coast Pacific Export, Inc., and Coast Pacific Trading, Inc., seek immunity from Washington's business and occupation tax for certain sales of timber to foreign customers. The corporations claim they fall within a Department of Revenue regulation, WAC 458–20–193C, that defines a tax exemption for export sales. However, the trial court ruled that the corporations' sales do not qualify for the exemption of Rule 193C. We affirm the trial court's decision.

The parties do not dispute the facts. The two appellants, Coast Pacific Export, Inc., and Coast Pacific Trading, Inc., are engaged in the business of purchasing logs domestically and selling them overseas. Coast Pacific Export is wholly owned by Coast Pacific Trading.

Coast Pacific generally conducts business under the "standing order" method. Coast Pacific's customers instruct it on how much timber they will need for the year, and what quality and type they desire. After the taxpayer receives these standing orders it procures the logs. Logs are purchased by Coast Pacific from three sources. About half of its logs come from major timber companies, which sell the logs already sorted and "rafted" together in the water. Coast Pacific also purchases from smaller independent operators, which deliver the logs by truckload to "log yards" where Coast Pacific sorts and rafts them. Finally,

some logs come from joint ventures; in these situations the logs are also delivered to log yards for sorting and rafting by Coast Pacific.

A towing company, an independent third party, moves the rafted logs from the log yard into storage, and eventually from storage to shipside for loading. It stores the logs in a fresher–water, protected holding area, primarily near the mouth of the Snohomish River. Most of Coast Pacific's logs move from the log yard into storage; however, logs that are scheduled to be loaded onto a ship within 2 weeks bypass storage.

The arrangements with the towing company are essentially unwritten. It arranges and charges (after 30 days) for raft storage and its boomstick, towing, and storage charges are billed to Coast Pacific's customers. Usually, however, it will not move the rafted logs "under the hook," alongside, or otherwise into a location from which the logs can be loaded aboard ship until Coast Pacific provides a verbal release. Coast Pacific does not give a verbal release until it has received final payment from its customer.

The Department of Revenue audited both Coast Pacific corporations for the calendar years 1978–81. It selected for taxation certain sales with "F.O.B." ("free on board") delivery locations that were not alongside or on board a ship. Pursuant to Rule 193C, the Department did not attempt to tax sales with "F.A.S." ("free alongside ship") delivery points,[1] nor did the Department attempt to tax sales with shiploading or imminent–loading F.O.B. delivery points. Virtually all of the logs designated for taxation had been delivered into storage and had remained in storage for

---

[1]Rule 193C provides in part: "To be tax exempt upon export sales, the seller must document the fact that he placed the goods into the export process. That may be shown by the seller obtaining and keeping in his files any one of the following documentary evidence:

" . . .

"(3) Documents consisting of:

"(a) Purchase orders or contracts of sale which show that the seller is required to get the goods into the export stream, e.g., 'f.a.s. vessel;' . . ."

more than 2 weeks before delivery to ocean–bound vessels.

The Department concluded that Coast Pacific Trading owed $14,232 in business and occupation tax, and that Coast Pacific Export owed $75,479.90. Both assessments were issued in March 1982. Coast Pacific protested and appealed the assessments. On August 4, 1983, a formal hearing was conducted by the Board of Tax Appeals. The taxpayers presented testimony, exhibits, and evidence. On June 8, 1984, a final decision was entered. The Board entered 14 findings of fact and 12 conclusions of law. The Board decided that the sales identified in the audit did not qualify for the tax exemption described in WAC 458–20–193C.

Coast Pacific then instituted an action in the Superior Court for Snohomish County for recovery of the taxes it had paid. Coast Pacific filed a motion for summary judgment on October 16, 1984, and argued the motion on December 7. At oral argument the Department of Revenue also moved for summary judgment. On January 30, 1985, the trial court filed a memorandum opinion in favor of the Department of Revenue. It decided that the business and occupation tax imposed by the Department was constitutional under the United States Supreme Court decision of *Department of Rev. v. Association of Wash. Stevedoring Cos.*, 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978). The court also decided that the log sales did not qualify for a tax exemption even if WAC 458–20–193C controlled instead of Supreme Court decisions.

Coast Pacific appealed to Division One of the Court of Appeals, and that court transferred the case to this court. Two companies, Manke Lumber Company and Longview Fibre Company, have filed amicus curiae briefs to support Coast Pacific.

The United States Constitution's "import–export clause" provides that:

> No state shall, without the consent of the congress, lay any imposts or duties on imports or exports . . .

U.S. Const. art. 1, § 10. From 1886 until the 1970's the United States Supreme Court reasoned that the constitution prohibited all taxes on imports or exports, and the Court's analysis focused on determining whether a local tax reached an "import" or "export." With respect to exports, the dispositive issue was whether the tax reached goods that had entered the "export stream," the final, continuous journey out of the country. *See, e.g., Kosydar v. National Cash Register Co.,* 417 U.S. 62, 70–71, 40 L. Ed. 2d 660, 94 S. Ct. 2108 (1974); *Coe v. Errol,* 116 U.S. 517, 526, 527, 29 L. Ed. 715, 6 S. Ct. 475 (1886). As soon as the final journey began, tax immunity attached.

In 1976, the United States Supreme Court initiated a different approach to import–export clause cases. In *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535 (1976), the Court did not analyze whether stored goods were "imports." Instead, the Court analyzed whether the tax on those goods was unconstitutional as an "impost" or "duty." In *Department of Rev. v. Association of Wash. Stevedoring Cos., supra,* the Court similarly did not analyze whether Washington's business and occupation tax on stevedoring services reached "exports." Instead, the Court again analyzed the nature of the tax. In both decisions the Court concluded that the constitutionality of a challenged import or export tax must be determined in light of the history and purpose of the import–export clause, and in both decisions the Court found the taxes constitutional. Commentators have concluded that the decisions signal a reluctance to invalidate state taxation schemes under the import–export clause. *See, e.g.,* Comment, *Constitutional Law—Nondiscriminatory Ad Valorem Property Tax May Be Applied to Imports,* 30 Rutgers L. Rev. 193, 205–08 (1976).

The Department of Revenue established a rule to define the circumstances in which a taxpayer can qualify for an "export sales" exemption from Washington's business and occupation tax. *See* WAC 458–20–193C. The parties agree that in this enactment the Department intended to codify

the requirements for immunity established by United States Supreme Court decisions. However, the Department has not changed Rule 193C since the United States Supreme Court initiated its change of analysis. In this case the Department of Revenue abandoned reliance on Rule 193C in Superior Court, and argued that the court should use *Stevedoring* to decide whether Coast Pacific qualifies for a tax exemption.

The trial court ruled that under *Stevedoring* the tax assessed on Coast Pacific's log transactions is constitutional. Coast Pacific does not challenge this decision; instead, Coast Pacific argues on appeal that 193C provides a tax exemption despite the United States Supreme Court's decisions in *Michelin* and *Stevedoring*. Coast Pacific reasons that Washington can provide greater protection to exporters from business and occupation taxes if it so chooses.

The Department of Revenue cannot use Rule 193C to expand the tax immunity of exporters beyond the exemptions provided by statute or required by the constitution. The Legislature has allocated to the Department the authority only to establish procedural rules.[2] The Department cannot contradict a substantive legislative enactment by administrative regulation.

> [T]he department is without authority to amend the statute by regulation. It cannot properly carve out an exemption . . . when the statute makes no such exemption.

*Budget Rent–A–Car of Washington–Oregon, Inc. v. Department of Rev.*, 81 Wn.2d 171, 176, 500 P.2d 764 (1972). This court has ruled repeatedly that when the Legislature enacted the business and occupation tax the Legislature intended "to tax all business activities not expressly excluded". *Rena–Ware Distribs., Inc. v. State*, 77 Wn.2d

---

[2] "The administration of this and chapters 82.04 through 82.27 RCW of this title is vested in the department of revenue which shall prescribe *forms and rules of procedure* for the determination of the taxable status of any person . . ." (Italics ours.) RCW 82.32.300.

514, 517, 463 P.2d 622 (1970). In the case of imports and exports, the Legislature has provided that a deduction is available only for tax amounts "which the state is prohibited from taxing under the Constitution . . . of the United States." RCW 82.04.4286.[3] Arguably, the *Michelin* and *Stevedoring* decisions have reduced the scope of the constitutional prohibition of export and import taxes. We reject Coast Pacific's argument that Rule 193C increases the deduction available to exporters.

We also reject the arguments of Coast Pacific and amicus on behalf of Longview Fibre Company that Coast Pacific's log sales qualify for the tax immunity of goods within the export stream recognized by pre-*Michelin* United States Supreme Court decisions. We acknowledge that neither *Michelin* nor *Stevedoring* involved the constitutionality of a tax imposed directly on goods in the export stream, and that the *Stevedoring* majority expressly refused to reach the issue of the applicability of the new *Michelin* analysis to goods that had entered the export stream. 435 U.S. at 757 n.23. The parties thus correctly point out that *Michelin* and *Stevedoring* have not overruled decisions that struck down taxes levied directly on goods that had reached the export stream. These decisions include *Richfield Oil Corp. v. State Bd. of Equalization,* 329 U.S. 69, 91 L. Ed. 80, 67 S. Ct. 156 (1946); *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 73 L. Ed. 626, 49 S. Ct. 292 (1929); *Tacoma v. General Metals of Tacoma, Inc.,* 84 Wn.2d 560, 527 P.2d 1314 (1974); and *Carrington Co. v. Department of Rev.,* 84 Wn.2d 444, 527 P.2d 74 (1974), *cert. denied,* 421 U.S. 979 (1975).

■ However, federal decisions squarely support the trial court's conclusion that the Department taxed Coast Pacific's logs at a point that preceded their entrance into

---

[3]RCW 82.04.4286 provides in full that:

"In computing tax there may be deducted from the measure of tax amounts derived from business which the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States."

the export stream. In a similar fact situation the United States Supreme Court decided that logs cut in Maine and stored in a Maine river before shipment overseas had not yet begun their final journey as exports. *Coe v. Errol,* 116 U.S. 517, 29 L. Ed. 715, 6 S. Ct. 475 (1886). Recently, in *Sumitomo Forestry Co. v. Thurston Cy.,* 504 F.2d 604 (9th Cir. 1974), the Ninth Circuit Court of Appeals followed *Coe v. Errol, supra,* in a case with facts even more similar to the facts of this case. A log exporter purchased logs in Washington to fill orders from Japanese customers, and stored the logs in the Port of Olympia before shipment overseas. The Ninth Circuit concluded that the logs had not yet entered the export stream:

> Sumitomo's logs are in the same position as the second collection of logs in *Coe.* They were cut in the forests of Washington state and taken to an entrepot within that state, the port of Olympia, to await shipment out of the state. They had neither been committed to a common carrier for export, A. G. Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865 (1923), nor loaded upon the ship that would take them to Japan, Richfield Oil Corp. v. State Board, supra. . . . [U]nder *Coe,* Sumitomo's logs were not "exports" while stored at the port awaiting shipment.

(Footnote omitted.) 504 F.2d at 607.

Coast Pacific and amicus rely on *Richfield Oil Corp. v. State Bd. of Equalization, supra,* and *Tacoma v. General Metals of Tacoma, Inc., supra,* to argue for tax immunity. In an excellent memorandum opinion, the trial court noted that both cases are factually distinguishable. In both of those cases the taxable transactions coincided with the loading of the cargo aboard the ship bound for foreign port. In contrast, in this case the taxable transaction—the sale of the logs—was completed before the logs were towed from storage to be loaded aboard ship for their final journey overseas. We also agree with the trial court that our decision in *Carrington Co. v. Department of Rev., supra,* does not provide compelling authority for this case.

We understand Coast Pacific's argument that these logs

were reasonably certain to be exported and that their "final movement" overseas had begun before the logs reached the F.O.B. delivery point. However, courts repeatedly have rejected these grounds for tax immunity. The *Sumitomo* court specifically responded that "[c]ertainty of export evidenced by financial and contractual relationships does not by itself render goods 'exports' before the commencement of their journey abroad." 504 F.2d at 608. The *Coe v. Errol, supra,* Court explained the matter well:

> The point of time when State jurisdiction over the commodities of commerce begins and ends is not an easy matter to designate or define, and yet it is highly important . . .
>
> . . . It seems to us untenable to hold that a crop or a herd is exempt from taxation merely because it is, by its owner, intended for exportation. If such were the rule in many States there would be nothing but the lands and real estate to bear the taxes. . . . Certainly, as long as . . . products are on the lands which produce them, they are part of the general property of the State. And so we think they continue to be until they have entered upon their final journey for leaving the State and going into another State.

*Coe,* 116 U.S. at 526–28.

In effect, Coast Pacific asks for blanket tax immunity for any business that buys or manufactures goods for shipment overseas. The import–export clause does not require such a broad immunity. The framers of the import–export clause intended to allow the states to impose sufficient taxes to defray the expenses of providing local services to the importers and exporters of goods. Abramson, *State Taxation of Exports: The Stream of Constitutionality,* 54 N.C. L. Rev. 59, 61–62 (1975). In 1949, Justice Frankfurter wrote in *Joy Oil Co. v. State Tax Comm'n,* 337 U.S. 286, 93 L. Ed. 1366, 69 S. Ct. 1075 (1949) that "[t]he Export–Import Clause was meant to confer immunity from local taxation upon property being exported, not to relieve property eventually to be exported from its share of the cost of local services." 337 U.S. at 288. Justice Hale of this court agreed:

The billions of dollars worth of goods piled on the docks of the nation's ports, or within nearby warehouses and storage depots, can hardly be said to be exports at that stage of the journey, even though documented for overseas shipment and ultimate delivery. They and the business activities connected with them are at that point still drawing all of the beneficial and protective services of the state and municipality in which they are kept, including those provided by police, firemen, inspectors and all of their equipment and paraphernalia. They have the use of the public streets, highways, utilities and ports. . . . The goods and the transactions affecting them should, therefore, bear their fair share of the taxes imposed upon them or the businesses connected with them to support the state and local services precisely as do all other goods and businesses so taxed within the state.

*Carrington Co. v. Department of Rev.*, 84 Wn.2d at 466–67 (Hale, C.J., dissenting).

Rule 193C does not provide tax immunity greater than the immunity required by the import–export clause of the federal constitution. Federal and Washington state decisions both support the trial court's conclusion that Coast Pacific's logs had not entered the export stream—or acquired tax immunity—when taxed by the Department of Revenue. For these reasons we affirm the trial court's decision.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied August 28, 1986.