[No. 37426.    En Banc.    March 18, 1965.]

REYNOLDS METALS COMPANY, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.**

*Reported in 400 P. (2d) 310.

*DeWitt Williams* and *Williams, Lanza, Kastner & Gibbs,* for appellant.

*The Attorney General, James A. Furber* and *Henry W. Wager, Assistants,* for respondents.

HUNTER, J.—This is an action by Reynolds Metals Company (hereinafter referred to as Reynolds) to obtain a refund of taxes imposed under the Washington business and occupation tax law. The trial court entered judgment denying the tax refund and injunctive relief requested. Reynolds appeals.

The taxes imposed by the Washington State Tax Commission were for the activities of producing metal aluminum and recovering cryolite at Reynolds' plant in Longview under the classification of manufacturing, pursuant to RCW chapter 82.04.

Reynolds has operations outside the state where bauxite ore is taken from the ground. Alumina is produced from this ore and is shipped to the Washington plant together with cryolite and other materials essential to the aluminum-reduction process, all of which are produced by Reynolds' operations outside the state. From the alumina, pure metallic aluminum pigs or ingots are produced in the Washington plant. A small part of this aluminum is sold outside the state and the remainder is shipped to Reynolds' out-of-state plants for fabrication into finished aluminum products. Some of the cryolite recovered also is sent to Reynolds' out-of-state plants.

Reynolds contends that it is not a manufacturer of the aluminum metal it ships to its own plants outside of the state for further fabrication because such metal does not constitute an article for "sale" or "commercial or industrial use" essential to the definition of the terms, "manufacturer"

and "to manufacture," under RCW 82.04.110 and RCW 82.04.120. None of this aluminum is produced for "sale," as that term is defined in RCW 82.04.140. Reynolds cites RCW 82.04.130:

" 'Commercial or industrial use' means the following uses of products, including byproducts, by the extractor or manufacturer thereof:

"(1) Any use as a consumer; and

"(2) The manufacturing of articles, substances or commodities from extracted products, including byproducts."

We are constrained to agree with Reynolds that such activity does not come within the *statutory* definition of "commercial or industrial use," *supra.* First, Reynolds does not use its Longview product, aluminum ingots, as a "consumer" within subsection (1) of RCW 82.04.190. Its use is within the exclusion of subsection (1) (c) therein:

" 'Consumer' means the following:

"(1) Any person who purchases, acquires, owns, holds, or uses any article of tangible personal property *other than for the purpose . . . (c) of consuming such property in producing for sale a new article of tangible personal property or a new substance, of which such property becomes an ingredient or component . . .*" (Italics ours.)

Second, subsection (2) of RCW 82.04.130 is inapplicable. As contended by Reynolds, it cannot be said that it has produced an extracted product for commercial or industrial use. Reynolds carries on no extracting activity in the state. Only an "extractor" under RCW 82.04.100 produces an extracted product. The production of aluminum is a manufacturing activity and not that of extracting. Neither is the aluminum produced by Reynolds in this state a byproduct. RCW 82.04.210.

■ However, we are not restricted to the *statutory definition* of "commercial or industrial use," in view of RCW 82.04.010, which provides:

"For the purposes of this chapter, *unless otherwise required by the context,* the terms used herein shall have the meaning given to them in RCW 82.04.020 through 82.04.212." (Italics ours.)

*St. Paul & Tacoma Lbr. Co. v. State,* 40 Wn. (2d) 347, 353, 243 P. (2d) 474 (1952).

Adherence to the statutory definition of "commercial and industrial use" would defeat the paramount intent of the legislature. Reading chapter 82.04 in its entirety, it is evident that the legislature intended therein that all persons engaged in business within the state be subjected to at least one business and occupation tax upon their activities in Washington. This is evident from a reading of RCW 82.04-.220, the statute which imposes the tax. It provides:

"There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. . . ."

In *Crown Zellerbach Corp. v. State,* 45 Wn. (2d) 749, 753, 278 P. (2d) 305 (1954), we emphasized that the legislature intended that business activities within the state be taxed at least once when we said:

". . . The legislative purpose, or tax policy, of the above-quoted statutes is to provide for as equitable an imposition of *actual tax liability* as possible in so far as our state business and occupation tax is concerned. Implicit in this policy is the avoidance of an imposition of double or triple tax liability as to particular products. In other words, the policy is to impose *actual liability* for payment of tax only once—on either (a) extracting, or (b) manufacturing, or (c) wholesaling. Thus, actual liability for the payment of the business and occupation tax is the key to the problem. The corollary of this policy is that actual liability for business and occupation tax *be imposed on at least one activity.*"

The term, "commercial or industrial use," as it appears in the definition of "Manufacturer" in RCW 82.04.110 and "To manufacture," in RCW 82.04.120, when considered in context, in light of the legislative intent, clearly requires a different definition of "commercial or industrial use," from that which appears in the statute, namely, the generally recognized definition. See *St. Paul & Tacoma Lbr. Co. v. State, supra.* We need no citation of authority to support our holding that Reynolds' activity in producing aluminum metal ingots in Washington for its subsequent use in fabrication of articles for sale in other states is one for "commer-

cial or industrial use" under the general meaning of that term. The production of aluminum by Reynolds in its Longview plant constituted the activity of manufacturing in the state of Washington under RCW 82.04.120 within the context of the business and occupation tax statutes.

Reynolds contends, however, that the aluminum metal it ships to its plants out of the state for further fabrication should not be subject to tax, as these deliveries are exempt as "interdepartmental charges" under Rule 201 of the State Tax Commission:

"In computing tax, *except when the tax is measured by value of products,* there may be excluded or deducted, whichever is applicable, the amounts constituting interdepartmental charges.

"The term 'interdepartmental charges' applies to amounts credited to the sales account or other gross income account of a taxpayer for goods, materials or services furnished by one department or branch of a business organization conducted by a person subject to tax to another department or branch of the same business concern or firm." (Italics ours.)

The rule by its exception does not apply to a tax measured by value of products. The manufacturing tax is measured by the value of products. RCW 82.04.220. Rule 201, *supra,* is therefore inapplicable to Reynolds' activities as a manufacturer.

■ Reynolds contends that, since the reduction of alumina to metal aluminum is only one step in the manufacturing of the finished product of aluminum, it is entitled to apportionment of the tax base according to value attributable to manufacturing in Washington, under the chapter. We disagree. The statute allows deductions only as to "Amounts derived from business which the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States." Reynolds relies on *Crown Zellerbach Corp. v. State, supra.* (45 Wn. (2d) 749). This same argument was raised in *Crown Zellerbach Corp. v. State,* 53 Wn. (2d) 813, 328 P. (2d) 884 (1958). We there said, in distinguishing *Crown Zellerbach Corp. v. State* (45 Wn. (2d) 749):

" . . . Appellant cites this decision [45 Wn. (2d) 749] in support of its contention that apportionment is proper, under the facts of the instant case.

"We do not agree that the cited case so holds because (1) the issue here presented was not before the court in that case, and (2) the apportionment referred to therein concerns activities which are substantially a part of the taxable incident, rather than those activities which enhance only the measure of the tax."

The instant case does not concern activities of Reynolds outside the state. The only taxable incident is Reynolds' manufacturing activity in this state. The gross value of the product manufactured is the measure of the tax only, which is imposed strictly upon the local activity. To make deductions for out-of-state costs would violate RCW 82.04-.070, which excludes such deductions from the measure of the tax imposed. *Crown Zellerbach Corp. v. State, supra* (53 Wn. (2d) 813). See *St. Regis Paper Co. v. State,* 63 Wn. (2d) 564, 388 P. (2d) 520 (1964).

Reynolds contends that the tax imposed offends the fourteenth amendment to the federal constitution and Art. 1, § 3, of our state constitution. It argues that since the tax is on the value of the manufactured article, it imposes a tax on extraterritorial activities and values. We discussed this argument at length in *Crown Zellerbach Corp. v. State, supra* (53 Wn. (2d) 813), wherein we stated:

"A review of the Federal cases concerned with the power of a state to tax a purely local activity, measured by the gross receipts from sales of the product within and outside the taxing state, reveals that such taxes have been upheld, where the local taxable incident is one of sufficient substance so that the sales price substantially reflects the value of the products at the place of manufacture. [cases cited]"

The United States Supreme Court in a recent case arising from this state, *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. (2d) 430, 84 S. Ct. 1564 (1964), stated the test to be as follows:

" . . . We must determine whether it is so closely related to the local activities of the corporation as to form 'some definite link, some minimum connection, between a

state and the person, property or transaction it seeks to tax.' . . ."

Here, the tax on Reynolds is for a purely local activity. Neither the fourteenth amendment to the federal constitution nor Art. 1, § 3, of our state constitution is contravened.

Reynolds further contends that since the tax imposed is not apportioned, it places a multiple burden upon, or directly interferes with, interstate commerce, in violation of the commerce clause of the federal constitution, Art. 1, § 8, clause 3. This argument is answered by our holding in *Crown Zellerbach Corp. v. State, supra* (53 Wn. (2d) 813). The tax on the local activity of manufacturing does not transcend state lines.

■ Reynolds contends the tax imposed denies it equal protection of the laws in contravention of the fourteenth amendment to the federal constitution and Art. 1, § 12, of our state constitution. It argues that, by having an out-of-state integrated business concern manufacturing in the state of Washington, it is discriminated against in favor of a completely local integrated business concern manufacturing in the state of Washington, in that Reynolds is subject to a multiple tax burden, whereas the local integrated business pays only one tax.

The argument is without merit. There is only one tax imposed on the local manufacturing activity within the state of Washington, which applies the same to all persons engaged in such activity. *Crown Zellerbach Corp. v. State, supra* (53 Wn. (2d) 813); *Crown Zellerbach Corp. v. State, supra* (45 Wn. (2d) 749).

■ Regarding the recovery of cryolite, the trial court found a significant change had been accomplished, when the end product was compared with the original substance before it was subjected to the recovery process. This is supported by the record and constitutes a manufacturing activity within the purview of RCW 82.04.120. *Continental Coffee Co. v. State*, 62 Wn. (2d) 829, 384 P. (2d) 862 (1963). The reasoning for the imposition of the manufacturing tax on metallic aluminum applies equally to cryolite.

We find it unnecessary to discuss the other arguments of Reynolds in view of our disposition of this appeal.

We hold the taxes imposed by the Washington State Tax Commission in the instant case to be valid. The judgment is affirmed.

ALL CONCUR.