[No. 41328.    En Banc.    April 15, 1971.]

TIME OIL COMPANY, *Appellant*, v. THE STATE OF WASHINGTON *et al.*, *Respondents.*

*Jones, Grey, Kehoe, Bayley, Hooper & Olsen, W. C. Anderson,* and *Clinton F. Raymond, Jr.,* for appellant.

*Slade Gorton, Attorney General, Michael B. Hansen* and *Timothy R. Malone, Assistants,* for respondents.

HAMILTON, C.J.—Predicated upon certain transactions between appellant, Time Oil Company (hereafter referred to as Time), other oil companies, such as Farmers Union Central Exchange, Douglas Oil Company, and Wilshire Oil Company (hereafter referred to as exchanger companies), and U. S. Oil & Refining Company (hereafter referred to as U. S. Oil), the State of Washington assessed certain business and occupation taxes against Time for the audit period between July 1, 1961, and June 30, 1965. Time appeals from a judgment of the Superior Court for Thurston County affirming the assessment.

The underlying facts are not in dispute.

Time is a corporation organized under the laws of the state of Washington, with headquarters in Seattle. It is engaged in the business of selling and distributing petroleum products within and without the state. During the audit period in question part of Time's supply of petroleum products was purchased from U. S. Oil, a Delaware corporation, with a refinery in Tacoma, Washington. During this period Time owned 50 per cent of the shares of stock of U. S. Oil, and the remaining 50 per cent of the shares were owned by various persons, including some who were officers or directors of Time.

At all times concerned, Time and the exchanger companies had in effect agreements pursuant to which Time would supply various petroleum products to the exchanger companies in the Pacific Northwest area, and receive back from the recipient companies like quantities of similar petroleum products in other market areas served by Time, *e.g.,* California, Oregon, and Montana. Time and the exchanger companies would keep an account of their respective transactions and at the end of an accounting period would attempt to balance out the products exchanged measure for measure. Other than the economic benefits flowing to the participants in the form of savings in transportation

and storage costs, no attempt was made by any of the parties to make a profit on the exchange transactions.

By Washington State Tax Commission Order 62-8, dated May 22, 1962, it was determined that the intercompany exchanges were subject to the business and occupation tax under the classification of wholesaling as set forth in RCW 82.04.270.[1] Time does not challenge the correctness of such ruling nor the taxable nature of the direct exchanges involved.

Occasionally, during the course of its exchange transactions, Time would, subject to the consent of U. S. Oil, request U. S. Oil to furnish quantities of petroleum products to one or more of the exchanger companies. This U. S. Oil would do, making physical delivery of the products, accompanied with bills of lading, at its refinery site in Tacoma. Following such delivery, U. S. Oil would invoice Time for the products supplied. Time, in turn, would pay U. S. Oil and debit the recipient exchanger company with the quantity of petroleum product so delivered.

Treating such transactions as akin to a direct exchange of products, as between Time and the exchanger companies involved, the state assessed Time for business and occupation taxes upon the same basis as such taxes were assessed against the direct intercompany exchanges, *i.e.*, as wholesaling activities. It is this assessment of taxes upon these transactions about which Time here complains.

Time seeks to distinguish the tripartite transactions from direct intercompany exchanges because, it contends, title and/or possession of the petroleum products supplied to the exchanger companies by U. S. Oil never came to reside in Time. This is so, Time argues, because such incidents of ownership, as well as the indicia of title—the bills of lading —passed directly from U. S. Oil to the exchanger recipient

---

[1]"(1) Upon every person except persons taxable under subsection (1) of RCW 82.04.260 engaging within this state in the business of making sales at wholesale; as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of forty-four one-hundredths of one percent: . . ." RCW 82.04.270.

when the products were delivered to the recipient at U. S. Oil's refinery site, and all that Time received in return for its payment to U. S. Oil was a claim against the exchanger recipient for the return of a like quantity of the products involved.

■ Time's argument is ingenious and in some other fields of legal liability revolving about the manner, time, and place of passage of possession and actual title to the petroleum products involved the argument might well prevail. However, here we are not concerned with the technicalities of the transference of title and possession. Rather, our primary concern is whether the transactions involved constitute a taxable business activity within the contemplation of the business and occupation tax statutes.

We, like the trial court, are satisfied that the transactions are assessable.

RCW 82.04.220 provides:

> There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.

RCW 82.04.140 defines "business" as:

> "Business" includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly.

For purposes of applying and measuring the tax, the statute then proceeds to classify various business activities, *i.e.*, Extracting, RCW 82.04.230; Manufacturing, RCW 82.04.240; Retailing, RCW 82.04.250; Wholesaling grains, RCW 82.04.260; Wholesaling, RCW 82.04.270; Other business or service activities, RCW 82.04.290.

Viewing these broad provisions, and RCW 82.04 in its entirety, it is obvious that the legislature intended to impose the business and occupation tax upon virtually all business activities carried on within the state. *Reynolds Metals Co. v. State*, 65 Wn.2d 882, 400 P.2d 310 (1965).

■ Conceding, as Time does, that its direct intercom-

pany exchanges of petroleum products constitute a taxable event to be classified as a wholesaling activity under RCW 82.04.270, it is inconceivable that the accomplishment of the same result—an exchange of petroleum products—through the convenient conduit of U. S. Oil in anywise alters or dilutes the basic taxable activity. To hold otherwise would be to exalt form over substance, and would import an exemption into the tax statutes where none now exists. *Cf. Washington Sav-Mor Oil Co. v. Tax Comm'n,* 58 Wn.2d 518, 364 P.2d 440 (1961).

The judgment of the superior court sustaining the assessment is affirmed.

FINLEY, ROSELLINI, HUNTER, HALE, NEILL, McGOVERN, and STAFFORD, JJ., concur.