[No. 35733-0-II.   Division Two.   November 27, 2007.]

DOT FOODS, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Jacquelyn A. Beatty*; and *Howard M. Goodfriend* (of *Edwards Sieh Smith & Goodfriend, PS*), for appellant.

*Robert M. McKenna, Attorney General*, and *Cameron G. Comfort, Assistant*, for respondent.

*Dirk J. Giseburt* (of *Davis Wright Tremaine, LLP*) on behalf of URM Stores, Inc., amicus curiae.

¶1 Penoyar, J. — Dot Foods sought a refund of business and occupation (B&O) taxes paid between 2000 and 2006, claiming that the Department of Revenue (Department) improperly denied them an exemption. During this time period, Dot Foods produced food products out-of-state that

it sold (through a wholly-owned subsidiary) to dairies, meat packers, and other food processors located in Washington, who then used the products as ingredients in other products that were sold to various retail outlets in Washington. Dot Foods appealed to the trial court for a refund of the taxes, claiming that it qualified for a statutory exemption for out-of-state persons selling consumer goods only to or through a "direct seller's representative." RCW 82.04.423. The trial court disagreed, and Dot Foods appeals. Despite Dot Foods' arguments to the contrary, the plain language of the exemption illustrates that it should only apply where direct seller's representatives exclusively sell consumer products. Because Dot Foods admits that a portion of its sales in Washington consist of nonconsumer products, the exemption does not apply to them. We affirm.

## FACTS

¶2 Washington law imposes a B&O tax "for the act or privilege of engaging in business activities" in the state. RCW 82.04.220. This tax is subject to several exemptions, including an exemption for sales by certain out-of-state persons to or through a direct seller's representative. RCW 82.04.423(1)(d). Specifically, RCW 82.04.423(1) states that the B&O tax does not apply to gross income derived from wholesale or retail sales in the state if the person:

(a) Does not own or lease real property within this state; and

(b) Does not regularly maintain a stock of tangible personal property in this state for sale in the ordinary course of business; and

(c) Is not a corporation incorporated under the laws of this state; and

(d) Makes sales in this state exclusively to or through a direct seller's representative.

Additionally, RCW 82.04.423(2) defines "direct seller's representative" in relevant part as

a person who buys consumer products on a buy-sell basis or a deposit-commission basis for resale, by the buyer or any other

person, in the home or otherwise than in a permanent retail establishment, or who sells, or solicits the sale of, consumer products in the home or otherwise than in a permanent retail establishment.

¶3 Dot Foods is an Illinois corporation that sells food and other products to food processors and food service distributors in Washington. The Department concedes that Dot Foods meets the first three requirements for the exemption (contained in RCW 82.04.423(1)(a)-(c)). The only requirement at issue here is whether Dot Foods "[m]akes sales in this state exclusively to or through a direct seller's representative." Clerk's Papers (CP) at 65; RCW 82.04.423(1)(d).

¶4 The Department issued a private letter ruling to Dot Foods in October 1997, stating that Dot Foods qualified for the direct seller's representative exemption under RCW 82.04.423. The letter ruling specified that it was binding on both Dot Foods and the Department but that it would remain binding only until: "the facts change; the law (either by statute or court decision) changes; the applicable rule(s) change; the Department of Revenue publicly announces a change in the policy upon which this ruling is based; or Dot Foods, Inc. is notified in writing that this ruling is not valid." CP at 69.

¶5 Since receiving the private letter ruling, Dot Foods' Washington sales have been exclusively through its wholly-owned subsidiary, Dot Transportation, Inc. (DTI). While neither Dot Foods nor DTI have sold any products in Washington from a permanent retail establishment, food processors purchase Dot Foods' products and use the products as ingredients in products that are then sold in permanent retail establishments in Washington. Additionally, DTI employed salesmen who solicited sales of Dot Foods' products in Washington. The salesmen personally called on businesses in Washington to solicit sales of Dot Foods' products, but they did not take orders for such products—all orders were transmitted either electronically to Dot Foods' headquarters in Illinois or telephonically to sales representatives located in Illinois.

¶6 The Department issued a "Special Notice for Direct Sellers" in February 2000, which informed taxpayers that the Department had updated its interpretation of the B&O tax. CP at 73. The notice directed taxpayers to WAC 458-20-246,[1] and it specifically stated that "[i]f a consumer

---

[1] The Department states in WAC 458-20-246 that "[t]his rule explains the statutory elements that must be satisfied in order to be eligible [for the direct seller's exemption]." The rule states that there are 10 statutory elements that must be satisfied in order for a seller to be eligible for the exemption: the 4 statutory elements in RCW 82.04.423(1) (the seller cannot own or lease real property in Washington, must not maintain a stock of tangible personal property in Washington, is not incorporated in Washington, and makes all sales in the tate through a direct seller's representative) and the 6 statutory elements in RCW 82.04.423(2) defining a direct seller's representative; *see also* WAC 458-20-246(4)(b):

(i) How the sale is made. . . . The direct seller sells the product using the services of a representative in one of two ways, which are described by two clauses in the statute. The first clause ("a person who buys ... for resale" from the direct seller) describes a wholesale sale by the direct seller. The second clause (a person who "sells or solicits the sale" for the direct seller) describes a retail sale by the direct seller.

(A) A transaction is on a "buy-sell basis" if the direct seller's representative . . . is entitled to retain part or all of the difference between the price at which [he or she] purchases the product and the price at which [he or she] sells the product . . . . A transaction is on a "deposit-commission basis" if the direct seller's representative . . . is entitled to retain part or all of a purchase deposit paid in connection with the transaction. . . .

(B) The location where the retail sale of the consumer product may take place . . . . The direct seller may take the exemption only if the retail sale of the consumer product takes place either in the home or otherwise than in a permanent retail establishment. The resale of the products sold by the direct seller at wholesale is restricted by the statute through the following language: "For resale, by the buyer or any other person, in the home or otherwise than in a permanent retail establishment." This restrictive phrase requires the product be sold at retail either in the home or in a nonpermanent retail establishment. Regardless of to whom the representative sells, the retail sale of the product must take place either in the buyer's home or in a location that is not a permanent retail establishment. . . .

(ii) What product the direct seller must be selling. The direct seller must be selling a consumer product . . . .

(iii) How the person is paid. The statute requires that "substantially all of the remuneration paid to such person . . . is directly related to sales or other output, including the performance of services, rather than the number of hours worked. ". . .

(iv) How the contract is memorialized. The services by the person must be performed pursuant to a written contract between the representative and the direct seller. . . .

(v) What the contract must contain. The sale and solicitation services must be the subject of the contract. The contract must provide that the representative will not be treated as an employee of the direct seller for federal tax purposes.

product is sold by *anyone* in a permanent retail establishment, the direct sellers' exemption is not available to the direct seller." CP at 73. The Department sent a copy of the notice to Dot Foods, which Dot Foods received.

¶7 The Department audited Dot Foods' B&O tax returns for 2000 through 2003 and, as a result, it issued a tax assessment due by October 2004. Dot Foods petitioned for administrative review of the tax assessment, but it also began to pay the tax, resulting in payments to the Department as follows: $50,973.27 for the 4th quarter of 2004; $302,973.48 for January through April 2006; and $747,123.26 in payment of the tax assessment. The parties then agreed to dismiss Dot Foods' petition for administrative review and proceed with the refund action in Thurston County Superior Court.

¶8 Both parties filed for summary judgment, which the trial court granted to the Department. The trial court relied heavily on this court's decision in *Stroh Brewery Co. v. Department of Revenue*, 104 Wn. App. 235, 15 P.3d 692, *review denied*, 144 Wn.2d 1002 (2001), narrowly construing the exemption in favor of the tax and against the taxpayer. The court concluded that Dot Foods did not qualify for the exemption, and it dismissed its claim with prejudice. Dot Foods now appeals.

## ANALYSIS

### I. Consumer Products

¶9 Dot Foods argues that the trial court erred in ruling that it did not qualify for the direct seller's exemption because it did not *exclusively* sell consumer products through a direct seller's representative. It contends that, contrary to the trial court's ruling, neither RCW 82.04.423(2) (defining "direct seller's representative") nor the Department's revision of WAC 458-20-246(4)(b)(ii) contain an exclusivity

(vi) The status of the representative. A person satisfying the requirements of the statute should also be a statutory nonemployee under federal law, since the requirements of RCW 82.04.423 and 26 U.S.C. 3508 are the same. . . .

WAC 458-20-246(4)(b) (second alteration in original).

requirement regarding the types of products the representative is buying or selling. Therefore, "[t]he fact that Dot Foods may occasionally sell a non-consumer product does not disqualify it from the direct seller's exemption for consumer products." Appellant's Br. at 28. The Department correctly responds that Dot Foods' interpretation does not read the statute as a whole and does not give effect to all the statutory language.

¶10 We review rulings on summary judgment and issues of statutory interpretation de novo. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005). When interpreting a statute, a reviewing court's fundamental duty is to give effect to the legislature's intent, which is primarily derived from the statutory language. *McLane Co. v. Dep't of Revenue*, 105 Wn. App. 409, 413, 19 P.3d 1119 (2001) (citing *U.S. Tobacco Sales & Mktg. Co. v. Dep't of Revenue*, 96 Wn. App. 932, 938, 982 P.2d 652 (1999)). Where the statutory language is plain and unambiguous, we derive the meaning of the statute solely from that language. *McLane Co.*, 105 Wn. App. at 413.

¶11 A tax exemption presupposes a taxable status, and the burden is on the taxpayer to establish eligibility for the benefit. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995) (citing *Group Health Coop. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967)). In interpreting the scope of a tax exemption, we resolve ambiguities in favor of taxation and against exemption. *Sehome Park*, 127 Wn.2d at 778. Specifically, we construe ambiguous tax exemptions strictly, though fairly, and in keeping with the statutory language. *Stroh*, 104 Wn. App. at 240 (quoting *Safeway, Inc. v. Dep't of Revenue*, 96 Wn. App. 156, 160, 978 P.2d 559 (1999)).

¶12 RCW 82.04.423(1)(d) states that the exemption applies only to sellers who make sales "exclusively to or through a direct seller's representative." Subsequently, RCW 82.04.423(2) specifically limits the definition of "direct seller's representative" to one who buys or sells consumer

products. Therefore, construing the statute as a whole properly imputes the exclusivity requirement to the consumer products requirement. Dot Foods has not met its burden of proving that the exemption should be read otherwise.

¶13 Additionally, Dot Foods' reliance on *Agrilink Foods, Inc. v. Department of Revenue*, 153 Wn.2d 392, 397-98, 103 P.3d 1226 (2005), is misplaced. In that case, the court refused to impute a "perishable finished product requirement" to subsection (4) of RCW 82.04.260 where several other subsections included the "finished product" language, but subsection (4) did not. Conversely here, subsection (2) merely defines a term in subsection (1)—it is not delineating an entirely different category.

¶14 Under our interpretation of RCW 82.04.423, a direct seller must exclusively sell consumer products in Washington in order to qualify for the exemption. Therefore, Dot Foods does not qualify for the exemption, and we affirm.

## II. STATUTORY INTERPRETATION

¶15 The Department and Dot Foods also offer two different interpretations of the remaining language of the direct seller's exemption. The Department argues that RCW 82.04.423, when construed as a whole, limits the direct seller's exemption to those whose products are *never* sold in a permanent retail establishment. The Department stresses the parallel structure of a wholesale/retail distinction in RCW 82.04.423(1), which exempts "gross income derived from the business of making sales at *wholesale or retail* if such person . . . (d) [m]akes sales in this state exclusively *to or through* a direct seller's representative." (Emphasis added.) According to the Department, a sale *to* a direct seller's representative refers to a wholesale sale, where the representative may resell the products *to another seller* outside of a permanent retail establishment. This corresponds to the first clause of RCW 82.04.423(2), which applies to a person who buys consumer products on a buy/sell basis or a deposit/commission basis for resale, by

the buyer or any other person, outside of a permanent retail establishment.

¶16 Conversely, the Department contends that a sale *through* a direct seller's representative refers to retail sales where the representative sells *to the consumer* outside of a permanent retail establishment. This corresponds to the second clause of RCW 82.04.423(2), which applies to a person who sells or solicits the sale of consumer products outside of a permanent retail establishment. The Department points out that the "or any other person" language is unnecessary in this clause because the clause refers to the final sale of a product to the consumer, not the sale of a product to another re-seller. Resp't Br. at 19.

¶17 Dot Foods, on the other hand, argues that the two clauses of RCW 82.04.423(2) create "two alternative and disjunctive definitions" of the direct seller's representative: (1) a person who buys consumer products on a buy-sell basis or a deposit-commission basis for resale, by the buyer or any other person, outside of a permanent retail establishment; and (2) a person who sells, or solicits the sale of, consumer products outside of a permanent retail establishment. Appellant's Br. at 17. Under this interpretation, Dot Foods claims that it satisfies the requirements of the second clause—DTI does not buy Dot Foods' products on a buy/sell or deposit/commission basis, but it does sell or solicit the sale of those products outside of permanent retail establishments.

¶18 Both of the offered interpretations of RCW 82.04.423 rely on the statute's plain language, and both are reasonable. Clearly, the statute is written ambiguously. As stated above, we resolve ambiguities in favor of taxation and against exemption. Additionally, the ambiguous language of the statute demands that we give some deference to the Department's interpretation. However, we note that further litigation regarding this statute will undoubtedly ensue if it is not amended to clarify the legislature's intent. Also, as a matter of public policy, the legislature may wish to clarify its intent in this area of taxation instead of

leaving the result to interpretation by the Department and the courts.

## A.   Deference to the Agency's Interpretation

¶19 Whether an agency's construction of the statute is accorded deference depends on whether the statute is ambiguous. *Waste Mgmt. of Seattle, Inc., v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). Where an agency is charged with the administration and enforcement of a statute, the agency's interpretation of an ambiguous statute is accorded great weight in determining legislative intent. *Waste Mgmt.*, 123 Wn.2d at 628; *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992). A statute is ambiguous if it has more than one reasonable interpretation. *McLane Co.*, 105 Wn. App. at 413.

¶20 Both the Department's and Dot Foods' interpretations of the statute appear reasonable, based on the plain language of the statute. Under the *Waste Management* rule, therefore, the agency's interpretation of the statute should be given "great weight." *Waste Mgmt.*, 123 Wn.2d at 628. However, in *Ass'n of Washington Business v. Department of Revenue*, 155 Wn.2d 430, 446-47, 120 P.3d 46 (2005), the Washington Supreme Court delineated different levels of deference for agency's legislative rules and interpretive rules:

> Therein lies the true difference between interpretive and legislative rules: their effect on the courts. Legislative rules bind the court if they are within the agency's delegated authority, are reasonable, and were adopted using the proper procedure. *See Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 314-15, 545 P.2d 5 (1976). Interpretive rules, however, are not binding on the courts at all: "Reviewing courts are not required to give any deference whatsoever to the agencies' views on that subject [correctness and desirability of the agencies' interpretations]. Legislative rules therefore have greater finality than interpretive rules because courts are

bound to give some deference to agency judgments embodied in the former, but they need not defer to agency judgments embodied in the latter."

*Ass'n of Wash. Bus.*, 155 Wn.2d at 446-47 (alteration in original) (footnote omitted) (quoting ARTHUR EARL BONFIELD, STATE ADMINISTRATIVE RULE MAKING § 6.9.1, at 281-82 (1986)).

¶21 Accordingly, Dot Foods argues that "[t]o the extent that the Department's 2000 revision to WAC 458-20-246 was merely an 'interpretive rule,'" we should afford it no deference. Appellant's Br. at 22-23. It contends that the Department radically departed from its longstanding interpretation of the statute, and therefore it was required to articulate a substantive basis for the change.[2]

¶22 Dot Foods' argument overstates the court's holding in *Ass'n of Washington Business*. While the court stated that interpretive rules are not binding on the courts "at all," it also stated that courts are not *required* to give deference to the agency's interpretation. *Ass'n of Wash. Bus.*, 155 Wn.2d at 447. Furthermore, the court clarified this statement by noting that

[w]hen a statute is ambiguous (i.e., subject to more than one reasonable interpretation), the agency's adoption of one of the possible reasonable choices is entitled to some deference. Even so, the agency's interpretation is not binding on the courts.

*Ass'n of Wash. Bus.*, 155 Wn.2d at 447 n.17 (citation omitted) (citing *Weyerhaeuser Co.*, 86 Wn.2d at 315). Therefore, regardless of whether the rule is interpretive or legislative (see below), we may still afford some deference to the Department's reasonable interpretation of the ambiguous statutory language in RCW 82.04.423.

---

[2] Dot Foods also claims that the statute is not ambiguous as it contains no references to "wholesale" or "retail" direct seller's representatives. However, this is the incorrect ambiguity standard—a statute is ambiguous if it lends itself to at least two reasonable interpretations. *McLane Co.*, 105 Wn. App. at 413. As stated above, the Department's interpretation is reasonable. Therefore, we consider the statutory language ambiguous even though the Department's labels of the two categories of representatives (wholesale and retail) are not themselves contained within the statute.

## B. Rules of Statutory Interpretation

¶23 The rules of statutory interpretation also support the Department's position regarding RCW 82.04.423. As the Washington Supreme Court summarized in *Whatcom County v. City of Bellingham*:

> If the statute is ambiguous, the courts must construe the statute so as to effectuate the legislative intent. In so doing, we avoid a literal reading if it would result in unlikely, absurd or strained consequences. The purpose of an enactment should prevail over express but inept wording. The court must give effect to legislative intent determined within the context of the entire statute. Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.

*Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (citations and internal quotation marks omitted).

¶24 While Dot Foods' interpretation does seem more literal than the Department's, it does not construe the statute as a whole. It does not address the "wholesale or retail" distinction in RCW 82.04.423(1), nor does it offer an explanation for the statute's differentiation between sales "to or through" a direct seller's representative. *See* Appellant's Br. at 24-25; RCW 82.04.423.

¶25 Conversely, the Department's interpretation does incorporate and give meaning to all phrases in the statute. Additionally, the Department points out that permitting Dot Foods, and other sellers like them, to take the direct seller's exemption, even though their products are ultimately sold in permanent retail establishments, renders the statute's "otherwise than in a permanent retail establishment" requirement meaningless. RCW 82.04.423(2). It simply does not stand to reason that the legislature would have prohibited the exemption for representatives who buy products for resale (by the buyer or any other person) in a permanent retail establishment but allowed the exemption

for representatives who sell or solicit the sale of products to others who then sell them in a permanent retail establishment (as Dot Foods apparently contends).

¶26 Furthermore, in *Stroh*, we agreed with the Department's interpretation of the statute (at least as it pertains to the first clause), holding that "in order for a direct seller who sells to wholesalers to qualify for the exemption, neither the . . . direct seller's representative, nor 'any other person' may resell the direct seller's products in a permanent retail establishment." *Stroh*, 104 Wn. App. at 241. While both parties in that case conceded that the Department's interpretation of the exemption was reasonable, Stroh argued that it was but one reasonable interpretation of the statute, and not a fair one. *Stroh*, 104 Wn. App. at 241-42. The opinion resolved this argument by stressing that "fairly and consistently interpreted, the exemption does not apply if either the direct seller's representative or anyone else sells the direct seller's products in a permanent retail establishment." *Stroh*, 104 Wn. App. at 242.

C. Legislative Intent

¶27 Finally, the sweeping language of RCW 82.04.220 indicates that the legislature's intent in enacting the tax was to impose the tax upon " 'virtually all business activities carried on within the state' " and to " 'leave practically no business and commerce free of . . . tax.' " *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000) (alteration in original) (quoting *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971); *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 175, 500 P.2d 764 (1972)).

¶28 We construe ambiguous tax exemptions strictly, though fairly, and in keeping with the statutory language. *Stroh*, 104 Wn. App. at 240 (quoting *Safeway, Inc.*, 96 Wn. App. at 160). The Department's interpretation of the exemption complies with this standard: it is reasonable; it construes the statute as a whole, giving meaning to every word; and it complies with the legislature's intent to apply

the B&O tax as broadly as possible. We affirm the trial court's ruling and endorse the Department's interpretation of the direct seller's exemption.

III. INTERPRETIVE OR LEGISLATIVE RULE—RAISED FOR THE FIRST TIME ON APPEAL

¶29 Dot Foods also argues that the Department's special notice failed to comply with Administrative Procedure Act (APA), chapter 34.05 RCW, notice requirements, as it contends that the revision of WAC 458-20-246 was not an interpretive rule but, instead, a "significant legislative rule." Appellant's Br. at 30; *see* RCW 34.05.328. The Department responds that this argument is barred because (1) Dot Foods did not raise this issue at the trial court, (2) the APA has a two-year statute of limitations for challenging a rule on procedural grounds (RCW 34.05.375), and (3) Dot Foods violated RCW 82.32.180 by neglecting to raise this argument in superior court. In the alternative, the Department asserts that Dot Foods' argument has no merit.

¶30 In its reply brief, Dot Foods contends that it did preserve its APA argument at the trial court by arguing in its motion for summary judgment that the Department's special notice "was insufficient to defeat 'Dot's continued reliance upon the exemption approved in its [private letter ruling].'" Appellant's Reply Br. at 18 (quoting CP at 57). For support, Dot Foods cites the following language from *Nickerson v. City of Anacortes*, 45 Wn. App. 432, 437, 725 P.2d 1027 (1986): "[I]t is not necessary to cite all supporting authority in the trial court in order to preserve a substantive issue for appeal. It is only necessary that the issue be raised."

¶31 Dot Foods' arguments at the trial court fail to meet even this broad standard. Dot Foods' notice argument below stressed only that the Special Notice was insufficient to prevent Dot Foods from relying on the private letter ruling—it raised a reliance argument, not an administrative law argument. Nothing in Dot Foods' briefings or motions apprised the trial court that it may contest the Depart-

ment's rulemaking procedure in enacting its revisions to WAC 458-20-246.

¶32 Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a). Dot Foods did not raise the issue of the Department's compliance with APA notice requirements on appeal; therefore, we need not address the merits of Dot Foods' interpretive/significant legislative rule argument.[3]

## IV. NATURAL PERSON

¶33 Finally, the Department argues that Dot Foods does not qualify for the direct seller's exemption because DTI (its purported direct seller's representative) is a corporation, not a natural person. Dot Foods disagrees, pointing out that RCW 82.04.030 includes "corporation" in its definition of "person" and that RCW 82.04.010 applies that definition to the entire chapter.

¶34 The Department's argument is based on its contention that the requirements of RCW 82.04.423(2)(a) and (b) (requiring that substantially all remuneration paid to the

---

[3] Even if we were to examine this issue, Dot Foods' arguments are not persuasive. RCW 34.05.328(5)(c)(iii) defines "significant legislative rule" as a rule "other than a procedural or interpretive rule" that, in part, "adopts substantive provisions of law pursuant to delegated legislative authority, the violation of which subjects a violator of such rule to a penalty or sanction." However, *Ass'n of Washington Business*, 155 Wn.2d at 447, clarified this distinction:

> Technically, interpretive rules are not binding on the public. They serve merely as advance notice of the agency's position should a dispute arise and the matter result in litigation. The public cannot be penalized or sanctioned for breaking them . . . . Accuracy and logic are the only clout interpretive rules wield. If the public violates an interpretive rule that accurately reflects the underlying statute, the public may be sanctioned and punished, not by authority of the rule, but *by authority of the statute*. This is the nature of interpretive rules.

Dot Foods contends that the Department's statement (in its audit of Dot Foods) that the revised rule "has the same effect as [the] Revenue Act" constituted an admission that the regulation was a significant legislative rule. Appellant's Br. at 31. However, according to *Ass'n of Washington Business*, the Department's statement that the rule carried the same weight as the Revenue Act was not necessarily an admission that the rule was not interpretive—as stated above, the Department's interpretation accurately reflects RCW 82.04.423. Dot Foods was not being sanctioned or punished because it violated the rule, but because it violated the *statute*.

direct seller's representative be directly related to output, and that the representative's services must be performed pursuant to a contract that makes clear that the representative is not an employee) "strongly imply that a direct seller's representative must be a natural person." Resp't Br. at 29. Additionally, the Department points out that RCW 82.04.010 contains limiting language ("Unless the context clearly requires otherwise, the definitions set forth in [sections including RCW 82.04.030] apply throughout this chapter.").

¶35 Dot Foods is correct—the statutory language is not ambiguous here. RCW 82.04.010 specifically applies the RCW 82.04.030 definition of "person" to RCW 82.04.423 "[u]nless the context clearly requires otherwise." Here, the context does not do so. Remuneration paid to a corporation may be directly related to output just as simply as remuneration paid to a natural person, and the contract requirement (making clear that the representative is not an employee) does not meet the standard of "clearly requir[ing] otherwise." RCW 82.04.010. We decline to endorse the Department's "natural person" requirement to the direct seller's exemption.

V.   URM Stores' Amicus Brief

¶36 In an amicus brief, URM Stores, Inc., raised several arguments pertaining to differences between the federal and state statutes, the exclusivity of the consumer products requirement, and the Department's natural person argument. Specifically, URM first argues that the Department's reliance on federal law is misplaced, as the legislative intent behind 26 U.S.C. § 3508 and RCW 82.04.423 is substantially different: Congress enacted its "direct seller" definition to reduce disputes regarding employment status and allocate liability for payroll taxes, and the Washington Legislature enacted the direct seller's exemption "to provide a break from [B&O] tax to out-of-state sellers." Amicus Br. at 4.

¶37 The Department agrees that the legislative intent behind the federal and state law differed, but it contends

that it is reasonable to assume that, when the legislature used language ("direct seller") identical to that in the federal statute to describe which out-of-state businesses qualified for the exemption, the legislature therefore intended to exempt from B&O taxes those sellers engaged in similar activities as federal "direct sellers." Reply to Amicus Br. at 4-5. This argument is persuasive—the legislature would not have used language identical to the federal statute had it not intended that the state's exemption apply to sellers who acted in a manner similar to the federal statute's direct seller. The different purpose of the federal tax statute did not preclude the legislature from borrowing its language, and it does not blind us to the obvious similarities between the two statutes.

¶38 Additionally, both URM and the Department introduce legislative history that, on the whole, indicates that the legislature intended the exemption as a narrow one. URM included a colloquy between two senators regarding the exemption where they expressed concern that it would include sellers at the Seattle Trade Center. The Department included in its brief a memorandum to one of those senators stating that the Trade Center was not a permanent retail establishment and, therefore, the exemption would still apply to its sellers. The Department also notes that an original draft of the exemption, limiting B&O taxes to only those who own or lease property in Washington or who maintain a stock of personal property in Washington, was not passed (possibly because of the massive loss of revenue that would ensue). The exemption was not passed until the language was changed to its current form.

¶39 URM's attacks on the Department's use of federal law in its interpretation are unpersuasive, and neither of the briefs presented novel arguments regarding the "exclusivity" and "natural person" issues. We affirm the trial court.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.

Review granted at 163 Wn.2d 1052 (2008).